We will first hear from counsel in Raad v. Bank Audi. That is 21-2612. Mr. Kellner, you have reserved three minutes, is that right? Yes, Your Honor. Thank you. For your rebuttal. When you are ready, you may proceed. May I please the court? My name is Douglas Kellner and I represent the plaintiffs and appellants seeking reversal of the district court's order dismissing the case on grounds of forum nonconvenience. I think it is particularly important to focus that the situation in Lebanon has deteriorated significantly even in the last year since the district court rendered the decision on appeal. Just ten days ago, Michel Aoun, who gave his departing speech as his term expired as president of Lebanon, noted that the judiciary in particular is no longer working and no longer recovering people's rights. He went on to say the judiciary, they're all scared. And why are they scared? Because of the stick and bribery. And then he also lamented in his conclusion that the judiciary is the first pillar. It's not dispensing justice. And so the system is broken in Lebanon. And this court should take judicial notice of the current situation there in evaluating whether the district court decision should be reversed. I'm not saying that the current situation is irrelevant. It might be relevant, but we are looking to see whether, primarily, whether the district court made errors in its ruling. And while the current situation may be something pertinent that we would want to consider, I think your focus should be on what the situation was at the time of the district court's ruling, because that's where you're contending errors were. I certainly agree with that. But the current situation does put into context the district court's decision to basically reject all of plaintiffs' factual affidavits from its experts and the numerous news reports that were submitted without any evidentiary hearing. Go ahead. So we understand your point about the current situation in Lebanon. Why don't you tell us what your view is of the district court's construction of the various clauses we've got here? Because I think that's one of the critical issues. Yes, Judge. And indeed, there are three parts to the argument. One is that the clause is permissive and not conclusive. Why? The difference is that all of the other cases ruling on similar clauses had the word exclusive written into the clause. And here, the judge simply said, well, because they said that the bank shall be entitled to take legal action against the client in any other jurisdiction, that that implied that the client didn't have the reciprocal right. And yet, a clause like that is ambiguous and should be construed against the drafter. Now, in your briefs, you tried to explain to us how the clause made sense consistent with your argument. I want to be sure I understand that. You're saying that how we should understand this contract is it made clear that the bank had a right to sue outside of Lebanon, but that your client had that right in any event, and therefore, it didn't have to be stated in the contract? That's our argument, Judge. Is that your position? That is our position. Anything else so that I understand? No, I think that's it. So you're saying that's how we should understand this? That's right. All right, but then let me move on to this. Part of your argument, as I understand it, is that the district court misunderstood the significance of the word shall. Let's say the district court treated the phrase that said the courts of Beirut shall have jurisdiction as if that were by itself a grant of exclusive jurisdiction because the word shall is a mandatory word, but it depends on the context in which the word shall is used. If the context from Fasano was to the effect that something to the effect that disputes shall be tried in the specified courts, that made exclusive jurisdiction, but simply saying that courts shall have jurisdiction does not grant exclusive jurisdiction. That was a significant part of the district court's reasoning, was it not? Yes, Your Honor. So I appreciate that observation. My time is short, so I want to move to what I think is the most significant point here, is that it is unreasonable and unjust to require litigation of this case in Lebanon. I'm sorry, I'm a little still stuck on the contract stuff. Can you talk about what the significance of the carve-out provision is and the Lebanese law that suggests that we shouldn't be rendering anything superfluous, that it's not mandatory, then wouldn't the carve-out provision be superfluous? Well, Your Honor, I believe our expert did address that by saying that it created an ambiguity and therefore it should be construed against the bank. Okay, so the response you would have is that the carve-out at best creates an ambiguity. Yes, Your Honor. Okay. But more significant is that- The contract with respect to, I'll just use first name's Patricia, there's the contract in 2014 that is explicit and then the contract in 2020 in English that has the same argument you've been making. What is the import of the 2020 contract? Are you saying it supersedes the 2014 entirely? I think that's pretty clear, Judge. I know the bank argues otherwise, but- Well, the 2014 contract was the one in effect when the money was deposited, or have I misunderstood that? Well, I think that's true for Patricia, but not true for the two children. Absolutely, I understand that. But now you're saying the 2020, even as to Patricia, supersedes 2014. Yes, Your Honor. Is there anything in the contract that said that explicitly? I don't recall. Okay, thank you. I'm sorry, and if the expert didn't address the carve-out, is there still enough, or we conclude that the expert didn't address the carve-out, is there still enough for us to conclude that there's an ambiguity? I think you can read it yourself, Judge, for that point. And he was looking at the whole thing and did address that. But it's very important, since I only have less than a minute left, to get to this unjust and unreasonable, which is an exception. Even if you find that the provision was mandatory, we submitted copious evidence to the court that the Lebanon courts were not functioning and that there was no feasible remedy in the courts of Lebanon. And that's simply confirmed by the events that have happened since. And most significantly, the bank cannot point to a single case where a depositor has ever actually recovered on a judgment, even though the law is clear that the bank owes the money. Isn't it correct that the strongest part of your argument with respect to non-functionality of the Beirut Lebanese courts is that the district court simply didn't address that? It addressed corruption of the judges, but non-functionality of the courts is a different issue. And the district court, as I understand it, simply didn't address that issue. Yes, Your Honor. And I'll just close by, if I could just have 30 seconds. Well, you do have about all the time. You've got three minutes. All right, well, because the Dow case reversed a case with a different clause, but then said we're not going to deal with a foreign nonconvenience issue, even though that was the ground for the district court reversal. We're going to reverse on jurisdiction grounds. There are strong arguments differentiating this case from Dow to show that there is New York jurisdiction. We're happy to hear about it. Thank you, sir. Mr. Rotenberg? Good morning. May it please the Court, my name is Jeff Rotenberg. I'm from DLA Piper, representing Bank Audi S.A.L. Consistent with this court's precedent, Judge Nathan appropriately considered and applied the forum selection clauses to grant the bank's motion to dismiss on forum nonconvenience grounds. The construction of the actual language about the Beirut courts shall have jurisdiction is contrary to precedent that says that that just means that jurisdiction of those courts will not be challenged, but it doesn't mean that it's exclusive. So to the extent she relied on that sentence, there's a problem, isn't there? There's a legal problem? The way I read the opinion, Your Honor, is that Judge Nathan looked at the clause as a whole, the way the circuit has instructed and the way Lebanon law instructs to look at a clause such as that and considered the first sentence that contains the word shall have jurisdiction over any action in the context of the second clause, which gives the right to the bank and the bank alone. Well, I'm going to get to the second clause, but it's just necessary to talk about them individually. She did suggest that the use of the word shall was indicative of exclusivity, which there's contrary law on that, right? There are cases that say shall alone. I'm not going to dispute that point, Your Honor. So now we get to the next sentence that she relied on, and your adversary says, well, that made clear that there would never be a dispute about the bank's ability to sue outside of Lebanon, but it doesn't say anything about what the other parties to the contract could do. I mean, to the extent you're foreclosing them from what they could have done if the contract were silent, which is sue wherever they could get jurisdiction, why should we assume that clarifying what the bank could do was a limitation on what the other parties could do? Because, Your Honor, it goes to the basic principles of language in a contract is considered in the total context of the contract, and in clauses in particular that's under both this circuit's law and New York law and Lebanese law, which is you look at the entire clause, and that clause, that however clause, has no purpose. There's no reason for it to be there based on appellant's construction of the agreement. Well, it precludes an argument that if the bank were to try to sue in New York or anywhere else, it precludes the argument that, no, no, it's required to sue in Lebanon. But based on the appellant's interpretation of the agreement, that clause is superfluous because it doesn't add anything. It precludes an argument that – It adds the bank wanted – the bank each time in negotiation of a contract looks out for its own interests, and the bank said we want this contract to be absolutely clear that we're not limited to suing in Beirut. We can sue outside in Lebanon, elsewhere from Beirut, and also any place that we can get jurisdictions. And they put that in for their interests. And the other side didn't say, well, we want to make clear that that applies to us as well. It is a possible – it is certainly a possible interpretation that under the principle of expresso willingness. But when you're negotiating a contract, each side looks out for its own interests, and the bank took the precaution to get that in to make clear there would be no problem if the bank wanted to sue elsewhere than Beirut. And the other side didn't bother to do that. It doesn't necessarily mean – it doesn't necessarily mean the other side is right. Well, I think the response to that, Your Honor, Judge Waddell, is the word however. However is a contrasting word. If it just said the rest of the sentence, the bank – Beirut shall have jurisdiction. The bank may sue. However is indicative of a contrast between the first sentence and the second sentence of the agreement. However, to make sure that it's clear that the bank doesn't have to sue only in Lebanon. Right. And, Your Honor, with that – but the other parties to the contract do. It's such a curious way to do that. I mean, this is a contract drafted by the bank. If the purpose here was to make sure that the other contracting parties could only sue in Lebanon, one would expect the bank to have said that in the contract. And they didn't. All they did was protect their own rights to sue outside of Lebanon. Right. And, Your Honor, there's a reason why in the context of a bank-customer relationship, it's important for the bank to have that right. The bank is in Lebanon. I understand that. It ensured that it did. But that doesn't mean that it was also contracting to only be sued by the other contracting parties in Lebanon. I mean, that's what I'm not seeing here. Help us out. Sure. Well, I think, again, I'll pull up the clause because I have it here. I think the bank's intent with the first part of the clause itself is to give exclusive jurisdiction to Lebanon. The language you referred, Your Honor, to Patricia Radd's two- Assume that I'm not persuaded by that, that the first sentence, that there shall be jurisdiction in Lebanon, is understood to be, was intended to be exclusive. Okay. So if you take that as permissive, as allowing both parties to sue in Lebanon, again, it goes back to core principles of contract interpretation. If you take the clause as a whole and you assume the first sentence gives everyone the right to sue wherever they want, the second sentence, I think, qualifies the first sentence and shows that there's asymmetry. I think our expert, Mr. Fogesel, used the term unilateral or asymmetrical form selection clauses, which is what this is. The rights of the parties- But, you know, would you say if you take the first clause to mean that any party has the right to sue elsewhere, it's not just what- I mean, that's what the first sentence says. The first sentence simply doesn't say that suits may be brought only in Lebanon or in Beirut. It doesn't say that. There's no way you can extract that. The fact that the word child is mandatory doesn't in any way imply that it's exclusive. And the precedent that was used by the district court in the Fasano case said something entirely different in using shall. It said that litigation shall be brought in selected jurisdiction. Right. And, Your Honor, I think the point you're making here with respect to Judge Nathan's opinion is on point if Judge Nathan's analysis stopped with the Fasano case and there wasn't the second sentence in the clause. I know I'm coming a little bit full circle here. But, again, the second sentence in the clause, our position is, and Judge Nathan agreed, is that it qualifies the first sentence and establishes this, as Mr. Fogesel said, as an asymmetrical form selection clause, which is common in Lebanon and I think common in banks generally around the world, where the bank's rights to sue are different than the customer's rights to sue from a foreign standpoint. You're saying to us that the bank took the occasion to say something which is very easy to say in a simple, direct sentence and instead used an extraordinarily circuitous route of relying on a questionable inference, a possible but not necessarily convincing inference of expressio unius in order to achieve the result that could have been made absolutely clear in a very simple sentence. Well, if the clause said exclusive, Your Honor, I don't think we'd be having this conversation. Exactly. No, but the point is that the clause does not need to say, I mean, New York law talks about this, the contract doesn't need, there are no magic words in a form selection clause. What the jurors say about that is that the 2014 contract, which is in Arabic, does say it. Right, so Your Honor, I think, yeah. So this is a party that contracted and used that word in what is the first contract relevant to this case and then didn't use it again in subsequent contracts. Your Honor. That doesn't support your argument. Well, I think actually there is a way that it does support our argument in that it shows you have people who are writing in English trying to convert from Arabic into English the intent of the original agreement with Ms. Patricia Rad, and this is the way in English that they make the agreement. But the usual contract rule is that when parties have used language in one contract and have not used it in another, that we assume they had a different intent in the other. Your Honor, you're comparing an Arabic language agreement with an English language agreement. And I know what the Second Circuit says about the word shall, as Judge Liddell mentioned, but the word shall and alone, when you're talking about converting between languages, can mean the same thing. I don't want to get too in the weeds, but if you say Beirut alone and then you say Beirut shall, you know, depending on the context, can effectively have the same meaning. I mean, your lawyers had an opportunity to look at the translated version, though, isn't that right? Our lawyers. The lawyers for the bank. I assume in Lebanon they did. I never, I mean, I was not consulted on the translated version. So, I mean, it wasn't a one-sided, unfair translation, right? No, this is the contract the party signed. Right, yes, correct. Do you agree that the 2020 contract with Patricia supersedes the 2014 contract with her? For purposes of this litigation, we do not, Your Honor. She's suing on a, Ms. Wadd is suing on a breach of contract that is alleged to have taken place in 2019, and that's when the claim arose. So that's why you're saying that in the 2014 contract with her. Yes, Your Honor. From a practical perspective, is that of any significance? If Stephanie and David can sue, is there any real effect to whether Patricia can sue as well? Well, I mean, if parties have different forum selection clauses, then sure, right? Meaning if I have a mandatory forum selection. But in terms of surrendering the money, if they're ordered to do so in an action, does it have any impact that it's two of these interested parties rather than all three that sue? I think it's different amounts of money. I think there are also personal jurisdiction issues and other issues that haven't been adjudicated yet that we think are dispositive. Thank you. Mr. Palmer, you've got three minutes. All right. Just one point on the 2014 agreement is that if you look at the record, the Arabic is at A240, and the English translation of the same Arabic contract is at A271 and does not contain the word alone, and that's the bank's translation of the English version of the contract. So that's what's in the record with that. While we're on that, what's your response to Council's argument that Patricia is suing for a 2019 breach and therefore before the 2020 contract? Well, first of all, I've just answered that, and that there's the other issue of the unjust and unreasonable, and that the English translation that the bank provided of its Arabic 2014 contract does not include that word alone. So those are the arguments, Judge. Mr. Rotenberg didn't really get a chance to talk about the issues with respect to unjust and unreasonable to require Lebanon, notwithstanding, even if the court should find that the contract was binding. But that's an important issue. And Judge Nathan basically took the submissions that the other side made, made what amounts to a factual determination rejecting all of the expert testimony and news articles that we cited. And I suggest that that is error to do that without a factual hearing, because it basically presumptively ruled on the issue. And because there was no factual hearing, it's appropriate for a de novo review by this court. I thought that you acknowledged in your first argument that Judge Nathan had addressed the issue of corruption, but she did not address the issue of non-functionality, which is the one that you are speaking about. Well, she addressed the issue of corruption by basically saying it's not sufficient to say that the courts are corrupt. You have to show that there's corruption in your particular case. And buried in the record is showing that prominent politicians are shareholders of Bank Audi, and that clear from the record is that no one has been able to recover their deposits, notwithstanding the fact that all of these bank procedures limiting the payment of deposits in dollars are internal bank procedures and not set forth by any exchange controls or law or official government regulation. And every judge who has had the temerity to rule on that in Lebanon has found that those internal bank procedures which give the bank complete discretion to decide whether or not they're going to honor a dollar deposit is not a matter of Lebanese law. And the result of that is that the banks are allowed, through this discretion, to allow politicians and allow friends of the bank to withdraw their dollar deposits while ignoring that responsibility for everybody else. Thank you. Thank you. Thank you both. We will take this case under advice. We then have United States v. Rodriguez, 21-2304. Thank you. Thank you. And, Mr. Kleinman, I am correct that you've not reserved any time for rebuttal. Correct. So, you are welcome to proceed. Thank you, Judge. Okay. Please, the Court, my name is Bernard Kleinman. I represent the appellant, Brian Rodriguez, in this case. This case revolves around two central issues. The first is whether, in fact, what was called a firearm was, in fact, a firearm, as that's defined under 924C. Second issue is how the plea proceeding was conducted and the failure. I phrase this in the context of ineffective assistance, which I'm well aware is normally brought before the district court rather than in front of the circuit. However, the circuit has ruled a number of times that it does have jurisdiction on an initial appeal to rule on ineffective assistance issues, where the facts are, I guess, overwhelming and it's clear that there has been a breach of the defendant's rights under the Sixth Amendment. The problem here, as I said, is that the way the plea proceeding took place and what happened during that colloquy was never clear that it was, in fact, number one, a firearm, as that's defined under the statute. The video of the Mayapak robbery did not show Mr. Rodriguez holding what was purported to be- Let me ask you this. Yes, ma'am. Your client allocuted that it was a firearm. He did. All right. So to the extent he did so, I'm not sure why the district court was required to ask him to state his understanding of what a firearm constituted. I mean, the word is used in the statute. He allocated according to that. I would think that's sufficient. Well, with all due respect, I don't believe that really is sufficient because a firearm is specifically defined and the courts have really- Unless the plea proceeding, the plea, for example, defines what he was carrying and that it was, in fact, a firearm under 924C. What's your support for that, that the allocation would require that? Because he's admitting to an offense, and I believe he has to admit to the elements of the offense. Just saying, and the government, for example, in its response said that Rodriguez merely, quote, with what the government said. Now, we did allocute that a gun was brandish and it was a firearm. However, I think there is more that should be required because the court was well aware that, for example, what looks like a gun, like, for example, the Nolan case, the court said that wasn't sufficient. It was a BB gun, and a firearm has to be something beyond even a gun. It has to be operable and be able to strike a spark and cause a projectile to come from it. And if it merely looks like a firearm, it isn't, then I think that that is an element of the statute that really has to be defined. And the government can certainly present that evidence and say at the plea proceeding that the firearm was a 9mm Glock and it was operable. And is that the firearm that was used by you or your co-conspirator during the robbery? And he could certainly say, he could say yes, but that didn't occur here. And I think that when you're dealing with, obviously, someone who doesn't understand, any defendant doesn't understand the nicety.